# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

CASE NO.: 16-cv-61752-Dimitrouleas/Snow

VENUS FASHION, INC.,

Plaintiff,

vs.

CHANGCHUN CHENGJI TECHNOLOGY
CO., LTD.
AUKEY INTERNATIONAL LIMITED, and
AUKEY E-BUSINESS CO., LTD.,

Defendants.

---

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION AND ORDER RESTRAINING
TRANSFER OF ASSETS AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

**DYKEMA GOSSETT PLLC**

Allan Gabriel
*Pro Hac Vice Pending*
333 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Telephone: 213-457-1800
Facsimile: 213-457-1850
agabriel@dykema.com

Aaron D. Charfoos
*Pro Hac Vice Pending*
10 S. Wacker Drive
Suite 2300
Chicago, IL 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155
acharfoos@dykema.com
*Attorneys for Plaintiff Venus Fashion, Inc.*

**AKERMAN LLP**

David Otero
Florida Bar No. 651370
david.otero@akerman.com
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

Peter A. Chiabotti
Florida Bar No. 0602671
peter.chiabotti@akerman.com
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313
*Attorneys for Plaintiff Venus Fashion, Inc.*

# Table of Contents

**Page**

I.   STATEMENT OF FACTS ........................................................................................ 2

   A.   Venus's Rights. ........................................................................................... 2

   B.   Defendants Are Engaged in Illegal Activities Within This District. ........................... 3

   C.   Venus Notified Vessos of the Unauthorized Use of the Images. ................................. 6

II.   ARGUMENT ...................................................................................................... 7

   A.   An *Ex Parte* Temporary Restraining Order is Essential to Prevent Continued
      Immediate Injury to Plaintiff. .......................................................................... 7

     1.   Standard for Temporary Restraining Order and Preliminary Injunction. ................. 8

     2.   Probability of Success on the Merits of Venus's Claims. ................................... 9

     3.   Venus is Suffering Irreparable Injury. ....................................................... 12

     4.   The Balance of Hardship Tips Sharply in Venus's Favor. ................................. 14

     5.   The Relief Sought Serves the Public Interest. .............................................. 14

     6.   The Equitable Relief Sought Should Issue. ................................................. 14

     7.   A Bond Should Secure The Injunction. ..................................................... 19

III.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arista Records LLC v. Lime Wire LLC*,
2010 U.S. Dist. LEXIS 155675 (S.D.N.Y. Oct. 26, 2010) ..........................................12, 13

*Baldree v. Cargill, Inc.*,
758 F. Supp. 704 (M.D. Fla. 1990), aff'd, 925 F.2d 1474 (11th Cir. 1991) ......................19

*Bateman v. Mnemonics, Inc.*,
79 F.3d 1532 (11th Cir. 1996) ......................................................................................10

*Bd. of Dirs. of Sapphire Bay Condos. W. v. Simpson*,
129 F. App'x 711, 77 U.S.P.Q.2d (BNA) 1629 (3rd Cir. May 2, 2005) ..........................16

*BMW of North America, Inc. v. Au-Tomotive Gold, Inc.*,
1996 U.S. Dist. LEXIS 22828 (M.D. Fla. 1996) ..............................................................19

*Buck v. Jewell-La Salle Realty Co.*,
283 U.S. 191, 51 S. Ct. 410, 75 L. Ed. 971 (1931)...........................................................9

*Columbia Pictures Indus. v. Fung*,
2010 U.S. Dist. 61169 (C.D. Cal. May 20, 2010).......................................................12, 13

*Corwin v. Walt Disney World Co.*,
475 F.3d 1239 (11th Cir. 2007) .....................................................................................11

*Davidoff & Cie, S.A. v. PLD Int'l*,
263 F.3d 1297 (11th Cir. 2001) .....................................................................................14

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*,
756 F.2d 1525 (11th Cir. 1985) .......................................................................................9

*Evans v. Wallace Berrie & Co.*,
681 F. Supp. 813 (S.D. Fla. 1988) ..................................................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)........................................................................................................9

*Ferrero v. Associated Materials, Inc.*,
923 F.2d 1441 (11th Cir. 1991) .................................................................................12, 14

*Ford Motor Co. v. Lapertosa*,
126 F. Supp. 2d 463 (E.D. Mich. 2001).....................................................................15, 17

ii

*Gaffigan v. Doe*,
    689 F. Supp. 2d 1332, 1341 (S.D. Fla. 2009) ....................................................12

*Iconix, Inc. v. Tokuda*,
    457 F. Supp. 2d 969 (N.D. Cal. 2006) ..............................................................15

*In re Vuitton Et Fils S.A.*,
    606 F.2d 1 (2nd Cir. 1979)..................................................................................8

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*,
    51 F.3d 982 (11th Cir. 1995) .........................................................................9, 17

*MGM Studios Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d. 1197 (C.D. Cal. 2007) .....................................................12, 13

*MiTek Holdings, Inc. v. Arce Eng'g Co.*,
    89 F.3d 1548 (11th Cir. 1996) .........................................................................10

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*,
    684 F.2d 821 (11th Cir. 1982) .........................................................................10

*People ex rel. Van de Kamp v. Tahoe Reg. Planning Agency*,
    766 F.2d 1319, 1326 (9th Cir. 1985) ...............................................................19

*Reebok Int'l v. Marnatech Enter.*,
    737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd sub nom. Reebok Int'l v.*
    *Marnatech Enters.*, 970 F.2d 552 (9th Cir. 1992) ..........................................17

*Roth v. Bank of the Commonwealth*,
    583 F.2d 527, 539 (6th Cir. 1978) ...................................................................13

*Rovio Entm't, Ltd. v. Royal Plush Toys, Inc.*, No. C 12-5543, 2012 U.S. Dist.
    LEXIS 169020, at *36 (N.D. Cal. Nov. 27, 2012) ..........................................14

*Siegel v. LePore*,
    120 F. Supp. 2d 1041 (S.D. Fla.), *aff'd*, 2000 WL 1781946 (11th Cir.
    2000) ....................................................................................................................8

*USACO Coal Co. v. Carbomin Energy, Inc.*,
    689 F.2d 94, 100 (6th Cir. 1982) ....................................................................19

**RULES**

Fed. R. Civ. P. 65 ...............................................................................1, 7, 17, 18

Fed. R. Civ. P. 64 ...............................................................................................17

STATUTES

15 U.S.C. § 1116 ...................................................................................................................1

17 U.S.C. § 106 .....................................................................................................................9

17 U.S.C. § 410 .....................................................................................................................9

17 U.S.C. § 501 .....................................................................................................................9

17 U.S.C. § 502 ..........................................................................................................7, 14, 15

17 U.S.C. § 504 ...................................................................................................................17

17 U.S.C. § 505 ...................................................................................................................17

DISTRICT COURT ORDERS

*American Bridal and Prom Industry Assoc., Inc. et al. v. The Partnerships and Unincorporated Associations Identified in Schedule "A" and John Does 1-100, et al.,* No. 1:16-cv-00023 (N.D. Ill. January 13, 2016) ...........................................18

*Chanel, Inc. v Paley*, Case No. 09-cv-04979-MHP (N.D. Cal. Oct. 26, 2009) ......................17

*Chanel, Inc. v. Zhixian*, Case No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010)..................15, 16

*Clear Skies Nev., L.L.C. v. Salman*, No. 8:15-cv-2710-T-30TGW, 2016 U.S. Dist. LEXIS 65384 (M.D. Fla. May 18, 2016) ....................................................................12

*Cobbler Nevada, LLC v. Woodard*, 8:15-cv-2652-T-33AEP, 2016 U.S. Dist. LEXIS 72630 (M.D. Fla. June 3, 2016)..........................................................................12

*Gaffigan v. Does 1-10*, Case No. 09-cv-61206-JAL (S.D. Fla. Sept. 11, 2009)...............15, 16

*Gucci America, Inc. v. Does 1-10,* Case No. 10-cv-60328-JAL (S.D. Fla. March 22, 2010).................................................................................................15, 16

*Malibu Media, L.L.C. v. Ritchie*, No. 8:14-cv-1570-T-30EAJ, 2015 U.S. Dist. LEXIS 43874 (M.D. Fla. Apr. 1, 2015)........................................................................12

*National Football League v. Chen Cheng, et al.*, No. 11-Civ-00344 (S.D.N.Y. February 1, 2011)...........................................................................................18

*The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, No. 10-Civ-1630 (AKH) (S.D.N.Y. December 2, 2010) ..........................18

*Popular Bank v. Banco Popular*,
    180 F.R.D. 461, 463 (S.D. Fla. 1998)..............................................................................18

*Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*, No. 10-Civ-9336 (S.D.
    N.Y. January 4, 2011)......................................................................................................18

*University Books & Videos, Inc. v. Metropolitan Dade County*,
    33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999......................................................................19

Plaintiff Venus Fashion, Inc. ("Venus") hereby does apply, on an *ex parte* basis, for entry of a temporary restraining order and, upon expiration of the temporary restraining order for a preliminary injunction against Defendants Changchun Chengji Technology Co., Ltd., Aukey International Limited, and Aukey E-Business Co., Ltd. d/b/a the domain name Vessos.com ("Vessos" or Defendants) pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65 (the *Ex Parte* Application").

Good cause exists for the foregoing orders. As set forth in the accompanying Memorandum of Points and Authorities, Defendants are infringing on Venus's registered copyrights by utilizing identical, substantially similar, or derivatives of photographs and images that are used to promote, sell, offer for sale or distribute Defendants' products within this Judicial District through a fully interactive commercial Internet website, vessos.com. The activities of Defendants constitute willful and intentional infringement of Venus's copyrighted works in total disregard of Venus's rights, and have taken place in spite of Defendants' knowledge that use of Venus's copyrighted works was, and is, in direct contravention of Venus's rights.

Defendants' unlawful activities have caused and will continue to cause irreparable injury to Venus. Among other things, Defendants have: (1) deprived Venus of its right to determine the manner in which Venus's copyrighted works are presented to the public; (2) deceived the public as to Venus's sponsorship and/or association of Defendants' goods and the websites through which such goods are marketed and sold; and (3) wrongfully traded and capitalized on Venus's reputation and goodwill and the commercial value of Venus's copyrighted works and the goods with which they are associated. Defendants should not be permitted to continue their unlawful activities and must be enjoined from continuing to infringe on Venus's copyrighted works.

WHEREFORE, Plaintiff respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order and schedule a hearing on Plaintiff's Motion for Preliminary Injunction before the expiration of the Temporary Restraining Order[1].

## MEMORANDUM OF LAW IN SUPPORT

## I.   STATEMENT OF FACTS

### A.   Venus's Rights.

Venus began in 1982, in a college dorm room, as a company creating competition bodysuits. Declaration of Robin Sheffler in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction and Order Restraining Transfer of Assets ("Sheffler") (Ex. 1 with Exs. A-E) at ¶ 2. Since that time, Venus has grown and is now a highly successful designer, creator and seller of women's clothing and swimwear. Sheffler at ¶¶ 3, 4. Venus is headquartered in the Jacksonville, Florida, where Venus's products are also designed and developed. *Id.* at ¶ 4.

Venus sells its products online, at www.venus.com and in a catalog Venus sends to its subscribers. *Id.* at ¶ 5. To market and promote its products, Venus spends significant time and money to create photographic images of its products (the "Images"), such as the Images below:

---

[1] If this Court grants Plaintiff's request for temporary restraining order, Plaintiff will immediately file an application for alternate service, seeking leave to serve Defendants by email and publication.  Plaintiffs will request that the hearing on Plaintiff's request for preliminary injunction be set after the Court rules on the application for alternate service.



*Id.* at ¶ 6. These Images are posted on Venus's website and included in its catalog. *Id.* at ¶ 7.

Venus also takes intellectual property seriously, holds and registers copyrights of the Images that it includes on its website or in its catalogs. *Id.* at ¶ 8. Venus is, and at all times relevant hereto has been, the owner of all rights in and to U.S. Copyright registration numbers TX 0008060111 registered January 8, 2015, T0008161774, registered February 23, 2016, and TXu 1-987-646, registered April 14, 2016, (the "Venus Copyrights") in which all of Venus's copyrighted Images at issue in this litigation appear. Sheffler at ¶ 8, Composite Exs. A1, A2 and A3. Venus's ownership and registrations of the copyrighted works precede Defendants' known infringement as alleged in the Complaint.

**B.** **Defendants Are Engaged in Illegal Activities Within This District.**

Venus's evidence demonstrates Defendants are engaged in the promotion, advertisement, distribution, sale, and offer for sale of goods by using photographs which infringe upon the Images protected by the Venus Copyrights (the "Infringing Photographs"). These goods tend to be of inferior quality and differ from what the customers believe that they are purchasing based upon Defendants' use of the Infringing Photographs. Sheffler at ¶ 13, Group Ex. C.

Defendants do not have, nor have they ever had, the right or authority to use the Images protected by the Venus Copyrights for any purpose. Sheffler at ¶ 10. However, despite their known lack of authority to do so (see below for Venus's correspondence putting Defendants on

notice of infringement), Defendants are promoting and otherwise advertising, distributing, selling, and/or offering for sale its goods by misleadingly using the Infringing Photographs ("Defendants' Goods") within this Judicial District and throughout the United States. Sheffler at ¶¶ 11, 12; Declaration of Aaron Charfoos in Support of Plaintiff's Ex Parte Application for Entry of Temporary Restraining Order, Preliminary Injunction and Order Restraining Transfer of Assets ("Charfoos") (Ex. 2 with Exs. F-J) at ¶ 2, Ex. F.

As evidenced in screen captures of vessos.com website pages, a comparison of the Images protected by the Venus Copyrights at issue to the Infringing Photographs used by Defendants in connection with the sale of Defendants' Goods confirm the infringing nature of Defendants' activities. Sheffler at ¶¶ 11, 12, Ex. B. Based on a June 21, 2016, review of the vessos.com website, there were over 200 Infringing Photographs that appeared to be identical or derivatives of the Venus copyrighted Images being used by Defendants to sell their Goods. Sheffler at ¶ 11, Ex. B.

Below are several comparisons of the Venus Image with the Infringing Photographs:





Sheffler at ¶¶ 11, 12, Ex. B.

Moreover, customers have posted numerous comments on Facebook clearly confusing Venus's goods with the lower quality goods on www.vessos.com – because the Defendants goods are marketed with the Infringing Photographs. Sheffler at ¶ 14, Ex. D. For example, numerous Venus customers have taken to Facebook to "educate" others about the differences between Venus and other companies using Venus's images to sell inferior products:

- "I just saw...i always buy from Venus, I love their clothes!! But I saw Vessos.com, they sell the same stuff at half price they even use the same models! Very disappointing! ☺"

- "all this stuff is on vessos.com for a 1/3 the price here"

- "Ok, why is one of your EXACT shirts only $11.69 on Vessos.com?? In your catalog it's $44!!!!!! The cold-shoulder tee."

- "The scam company is called VESSO.. STAY AWAY FROM THEM. Venus is LEGIT. What u see from them is exactly what you get. True to size n top notch quality"

- "I was wondering if they are one of those Chinese companies. I see they are solely out of Florida but that can be faked. What didn't you like about them?"

- "You have them mixed up with the Chinese knockoff companies. The clothes are not near the quality and they steal all of Venus' images so you think you are getting the same. They definitely are very bad knockoffs. Venus is a great company to order from, I have a ton of their products!"

- "Sharon Morgan, those other sites using Venus' model pics are the ones you should question. They aren't giving you the same quality and selling some cheaper made version for pennies, aren't true to fit, and while you wait on your $9 for months & months. I've used Venus for years and years. Never an issue with product, delivery, customer service, or a return."

- "Is this clothing company legit? Unlike the Chinese ones..."

- "WONDER IF ITS AN AMERICAN COMPANY OR CHINESE FACTORY??"

- "This is not a fraudulent company. I have ordered things from here plus they do returns if you don't like something! This is not a place from China!"

Sheffler at ¶ 14, Ex. D. As can be seen from the above, Venus and its customers are being harmed from Defendants' infringing activities.

### C.      Venus Notified Defendants of the Unauthorized Use of the Images.

On March 23, 2016, Venus sent an email to Defendants stating that its website had a photograph which appeared to be identical to one of Venus's copyrighted images. Sheffler at ¶ 16, Ex. E. "Jessie" from Vessos responded by asking for the copyright registration information, which Venus provided. *Id.*. However, "Jessie" did not respond to further correspondence and the images were not removed. *Id.*

After this initial March correspondence, Venus identified more instances of Venus Images being included as Infringing Photographs on the vessos.com website.  On June 3, 2016, Venus sent a second correspondence to Defendants identifying approximately 92 Infringing Photographs on the vessos.com website that appeared to be identical to the Venus copyrighted Images. Charfoos at ¶ 3, Ex. H. The letter was sent in hard copy to the physical address listed for Defendant Changchun Chengji Technology Co., Ltd. and all of its known U.S. trademark

counsel and electronically via email to service@vessos.com and the email addresses for all 3

U.S. counsel. Charfoos at ¶¶ 3, 4, Exs. G, H. Venus received no "undeliverable" messages for

the email communications. Charfoos at ¶ 4. Federal Express notified Venus that the letter sent to

the physical address for Changchun had been declined to be accepted. *Id.* Venus received no

substantive response to its correspondence. Charfoos at ¶ 5. The only response that Venus

received was from attorney Ms. Yanling Jiang who stated that she did not represent Defendants

in this matter and asked counsel for Venus to contact Defendants directly using the email address

listed on the website. *Id.*

## II.   <u>ARGUMENT</u>

Rule 65(a) and 65(b) of the Federal Rules of Civil Procedure and Section 502 of the

Copyright Act give this Court specific authority to issue an injunction to prevent further

infringement of Venus's Copyrights.  Fed. R. Civ. P. 65(a) (2009); 17 U.S.C. § 502 (1976).

Venus has no other option than to seek a temporary restraining order, preliminary injunction and

order restraining assets from this Court to prevent any further irreparable harm to Venus until

this matter may ultimately be decided by this Court.

### A.   <u>An *Ex Parte* Temporary Restraining Order is Essential to Prevent Continued Immediate Injury to Plaintiff.</u>

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary

restraining order may be granted without written or oral notice to the opposing party or that

party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that

immediate and irreparable injury, loss, or damage will result to the applicant before the adverse

party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b) (2009).  As

demonstrated herein, Venus will continue to suffer such  immediate and irreparable injury if

Defendants' wrongful activities are not immediately stopped by the issuance of a temporary restraining order.

Defendants fraudulently promote, advertise, and sell goods using Venus's copyrighted works via the Internet website vessos.com. By their actions, Defendants are not only diverting an unknown amount of business from Venus, but also creating a false association in the minds of consumers between Defendants and Venus, tarnishing the Venus brand. Thus, a temporary restraining order is necessary. *In re Vuitton Et Fils S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

With every passing day, Venus is suffering greater harm to its reputation, losing money and consumers are being defrauded out of their money. Moreover, if notice is given of Plaintiff's intent to seek injunctive relief, Defendants can easily and quickly transfer the registration of the domain name currently registered with a domestic registrar to foreign registrars outside the jurisdiction of this Court, thereby thwarting Plaintiff's ability to obtain meaningful relief.  The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of Venus's intellectual property and preserve the status quo until such time as a hearing can be held.

        1.    <u>Standard for Temporary Restraining Order and Preliminary Injunction.</u>

In order to obtain a preliminary injunctive relief, Plaintiff must establish that: (1) there is a likelihood that Plaintiff will succeed on the merits at the trial of this action; (2) Plaintiff will suffer irreparable injury if Defendants are not enjoined; (3) the injury to Plaintiff outweighs the threatened harm an injunction would cause to Defendants; and (4) the injunction would not disserve the public interest. *See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.,* 51 F.3d 982,

985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets); *see also E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.,* 756 F.2d 1525, 1530 (11th Cir. 1985). Additionally, a court may issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cnty, etc.,* 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974).

As will be demonstrated below, Venus's evidence satisfies the *Levi Strauss* test and the additional requirements under Rule 65(b) and, accordingly, injunctive relief is appropriate and necessary.

2.    <u>Probability of Success on the Merits of Venus's Claims.</u>

Venus's Complaint charges Defendants with copyright infringement under 17 U.S.C. §§ 106 and 501. Venus has a substantial likelihood of success on the merits of the claim. The Copyright Act gives the copyright owner the exclusive right to reproduce a copyrighted work, to display and distribute copies of the work and to create derivative works. *See id.*; 17 U.S.C. § 106 (2002).  In order to prevail on its copyright infringement claim, Venus must prove: (1) ownership of valid copyrights in the works at issue; and (2) Defendants copied constituent elements of the work that are original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Defendants' knowledge or intent is irrelevant in determining liability for copyright infringement.

*See* 17 U.S.C. § 501(a) (2012); *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198-99, 51 S.

Ct. 410, 412, 75 L. Ed. 971 (1931). Venus's evidence submitted herewith satisfies the elements

to establish Defendants' liability for copyright infringement.

Venus has submitted true and correct copies of its copyright registrations. Sheffler at ¶ 9,

Composite Exs. A1, A2 and A3. These registrations serve as *prima facie* evidence of validity and

ownership. 17 U.S.C. § 410(c) (1976).

Accordingly, the only question remaining is whether Defendants copied Venus's

protected works. However, based on the evidence before the Court, Defendants' copying of

Venus's registered works is also beyond dispute. Sheffler at ¶¶ 11, 12, Ex. B. The Eleventh

Circuit has held:

> As a factual matter, a proof of copying may be shown either by direct
> evidence, or, in the absence of direct evidence, it may be inferred from
> indirect evidence demonstrating that the defendant had access to the
> copyrighted work and that there are probative similarities between the
> allegedly infringing work and the copyrighted work.

*MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996).

In the instant case, as shown above in the Statement of Facts and accompanying exhibits,

the photographs on Defendants' website are either identical copies of Venus's Images, are

substantially identical, or are derivative works that have been modified by Defendants (for

example by changing the color of an article of clothing, cutting the head off of a model, etc.).

This Court need only find Defendants' infringing items bear "substantial similarity" to the

copyrighted works; duplication or identicalness are not necessary to establish infringement. *See*

*Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1544 n.25 (11th Cir. 1996). Moreover, substantial

similarity is not to be determined by the trained eye but by the "ordinary observer." *See Original*

*Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982) (citations

omitted). In most cases, Defendants' infringing photographs cannot be distinguished from Venus's copyrighted Images.

     An ordinary observer viewing these Images would undoubtedly view them as essentially identical, and thus strikingly similar, as seen below:



     Exhibit B contains hundreds of examples of the Venus Image and the Defendants Infringing Photographs, all of which are strikingly similar.

     In addition, there can be no question Defendants had access to and copied Venus's copyrighted Images.  An inference of access arises when a copy is virtually identical to the copyrighted work. *See Evans v. Wallace Berrie & Co., 6*81 F. Supp. 813, 818 (S.D. Fla. 1988)

(citing 3 NIMMER ON COPYRIGHT § 13.02(B), 13-15 and 13-16 n.20.2). *See also, Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1253-54 (11th Cir. 2007) ("Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar."). Since Defendants' Infringing Photographs are in many cases identical to Venus's copyrighted Images, an inference of access arises which is impossible for Defendants to legitimately dispute.

The existence of "substantial similarity" and access by Defendants establishes that the Defendants' Goods infringe Venus's copyrighted works and Venus has, therefore, shown a probability of success on the merits of its copyright infringement claim.

### 3.    Venus is Suffering Irreparable Injury.

Venus will suffer irreparable harm if Defendants are not enjoined from further infringing Venus's valuable intellectual property. Courts have recognized a wide variety of harms that will support a finding of irreparable harm including:

- Uncontrolled, widespread distribution of the copyrighted images. *Malibu Media, L.L.C. v. Ritchie*, No. 8:14-cv-1570-T-30EAJ, 2015 U.S. Dist. LEXIS 43874, at *1 (M.D. Fla. Apr. 1, 2015) (irreparable harm after the accused disseminated to a peer-to-peer file sharing site which assumedly resulted in uncontrolled peer-to-peer sharing); *Clear Skies Nev., L.L.C. v. Salman*, No. 8:15-cv-2710-T-30TGW, 2016 U.S. Dist. LEXIS 65384 (M.D. Fla. May 18, 2016) (court found irreparable harm after the accused uploaded copyrighted material during file sharing "swarm" on peer-to-peer file sharing site).

- A substantial likelihood of future infringements. *Cobbler Nevada, LLC v. Woodard*, 8:15-cv-2652-T-33AEP, 2016 U.S. Dist. LEXIS 72630 at *8-9 (M.D. Fla. June 3, 2016) (monetary damages are inadequate to compensate for copies improperly downloaded, copied and distributed by third parties on uncontrolled peer-to peer file sharing site); *Arista Records LLC v. Lime Wire LLC*, 2010 U.S. Dist. LEXIS 155675 at *13-14 (S.D.N.Y. Oct. 26, 2010) (claimant suffered irreparable harm from continued infringement through "viral" file sharing system); *Columbia Pictures Indus. v. Fung*, 2010 U.S. Dist. 61169 at *5 (C.D. Cal. May 20, 2010) (irreparable harm caused by the accused's system automatically making the copyrighted works available to download upon upload by users); *MGM Studios Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d. 1197, 1217-1218 (C.D. Cal. 2007) (irreparable harm caused by substantial number of copyrighted works have and would continue to be exposed to infringement on a large scale).

- Marketplace confusion. *Gaffigan v. Doe*, 689 F. Supp. 2d 1332, 1341 (S.D. Fla. 2009) (irreparable harm caused by similarity of works resulting in substantial likelihood of confusion).

- Harm to the copyright holder's reputation, goodwill, and brand. *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (irreparable harm caused by loss of customers and goodwill); *Gaffigan*, 689 F. Supp. 2d at 1341 (irreparable harm caused by continued harm to reputation and goodwill due to substantial likelihood of confusion and different quality of goods).

- Loss of the ability to control and enforce its copyrights. *Columbia Pictures Indus.*, 2010 U.S. Dist. 61169 at *5 (irreparable harm caused by availability of free infringing copies undermining the legitimate growing market for consumers to purchase the same works); *MGM Studios Inc.*, 518 F. Supp. 2d. at 1217-1218 (irreparable harm caused by substantial likelihood of continued infringement erodes claimant's ability to enforce their exclusive rights).

- Loss of customers and market share or diminution in the value of its copyrights. *Columbia Pictures Indus.*, 2010 U.S. Dist. 61169 at *5 (irreparable harm results from "staggering volume of infringement"); *Arista Records*, 2010 U.S. Dist. LEXIS 155675 at *14-15 (irreparable harm results from facilitating unauthorized free distribution of copyrighted works, which undermines the legitimate market); *Ferrero v. Associated Materials, Inc.*, 923 F.2d at 1449 (irreparable harm caused by loss of customers and goodwill citing 5th Circuit).

- Consumer injury. *Rovio Entm't, Ltd. v. Royal Plush Toys, Inc.*, No: C 12-5543 SBA, 2012 U.S. Dist. LEXIS 169020, at *36 (N.D. Cal. Nov. 27, 2012).

Each of these is present in the instant case and alone would be sufficient to find irreparable harm. For example, Defendants' infringement has increased at an alarming rate from 1 image in March 2016 to hundreds of images at the filing of this lawsuit.  Sheffler at ¶ 11, Ex. B. Thus Defendants' actions demonstrate both of a loss of Venus's ability to control and enforce its copyrights but also uncontrolled distribution of the Images.

In addition, as discussed above and in Exhibit C, Venus has actual evidence of loss of customers and market share, consumer confusion and harm to Venus's reputation. Sheffler at ¶ 13, Group Ex. C. Venus has invested substantial amounts of time and money to create the Images and fashions featured in the Images. Infringement of the Images is catastrophic to Venus's time, monetary investment in creating the Images and goodwill and reputation.

Moreover, the intangible nature of intellectual property rights poses an enhanced risk of irreparable harm. Damages cannot remedy Defendants' continued unauthorized use of Venus's Images. Hence, irreparable harm is both likely and imminent and favors granting injunctive relief.

4.      The Balance of Hardship Tips Sharply in Venus's Favor.

The equities in this case strongly favor injunctive relief, despite any burden placed on Defendants.  Defendants may continue any legitimate business despite the requested injunctive relief, which balances any harm caused by an injunction. *Davidoff & Cie, S.A. v. PLD Int'l, 2*63 F.3d 1297, 1304 (11th Cir. 2001).  Permitting Defendants to continue interfering with Venus's business and goodwill, even for a short time, will continue to create irreparable harm toward Venus. The balance of the equities favors granting injunctive relief.

5.      The Relief Sought Serves the Public Interest.

The public interest strongly favors injunctive relief in this case. This interest is served by halting Defendants' direct and misleading usage of the Images. *Id.* at 1034 ("public interest is served by preventing consumer confusion in the marketplace").  Further, Defendants' conduct violates U.S. Copyright laws and the underlying public policies of those laws. Public interest favors compliance with the law.  And so, the public interest favors granting injunctive relief.

Therefore, all factors favor granting Venus's request for a temporary restraining order and preliminary injunction.

6.      Venus faces immediate and irreparable injury and the *ex parte* relief is necessary to maintain the status quo.

As discussed above, Venus has repeatedly put Defendants on notice of its infringement. Instead of curbing its infringing activities, Defendants engaged in unrestrained escalation in the scope and content of its infringement.  In the span of just over two months, Defendants rapidly

expanded from just one Infringing Photograph on its website to hundreds.  Sheffler at ¶ 11, Ex.

B.  Because Defendants doubled down on its infringing activities after confirming receipt of

Venus's first infringement notification email, Defendants' pattern of willful infringement gives

every indication that Defendants will continue to add new Infringing Photographs, including

photographs of Venus's newest lines when released.  Therefore, Venus will suffer immediate and

irreparable injury, loss and damage if the temporary restraining order is not issued.  Fed. R. Civ.

P. 65(b)(1).

Moreover, this Court has based the issuance of a temporary restraining order on the

likelihood that Defendants may transfer assets beyond the jurisdiction of the Court when dealing

with the "inherently deceptive nature" of certain forms of intellectual property infringement:

> In light of the inherently deceptive nature of the counterfeiting business and the
> likelihood that Defendants have violated federal trademark laws, Plaintiff has
> good reason to believe Defendants will hide or transfer their ill-gotten assets
> beyond the jurisdiction of this Court unless those assets are restrained.

*Abercrombie & Fitch Trading Co. v. 2cheapbuy.com*, Case No. 14-CV-60250, 2014 U.S. Dist.

LEXIS 186870, *13 (S.D. Fla. Feb. 3, 2014).

Finally, given the potential risk of transfer of assets outside the jurisdiction of the Court

and the potential for yet more infringement, Plaintiffs seek this temporary restraining order to

preserve the *status quo* until this Court is able to hold a hearing for Preliminary Injunction which

is filed concurrently with the request for a temporary restraining order.

       7.    <u>The Equitable Relief Sought Should Issue.</u>

This Court has specific authority to order injunctive relief under Section 502 of the

Copyright Act. 17 U.S.C. § 502 (1976).  Venus requests entry of the following orders.

a. <u>Entry of a Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of the Venus Images is Appropriate.</u>

Venus requests an order requiring Defendants immediately cease all use of the Venus copyrighted Images and any derivative works. This remedy is specifically provided in the Copyright Act, which empowers this Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." *Id.* at § 502(a).

b. <u>Entry of an Order Prohibiting Transfer of the Subject Domain Name During the Pendency of this Action is Appropriate.</u>

To preserve the status quo during the pendency of this litigation, Venus seeks an order prohibiting Defendants from transferring the www.vessos.com domain name to other parties. Under the operating rules of GoDaddy.com, where vessos.com is registered (Charfoos ¶ 6, Ex .I), registrants can transfer ownership of domain names (Charfoos at ¶ 7, Ex. J (Go-Daddy Domain Transfer Guide https://www.godaddy.com/help/move-a-domain-to-another-godaddy-account-822)). Therefore, Defendants involved in litigation can change the ownership of a domain name and thereby frustrate the court's ability to provide relief to the plaintiff.

Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in intellectual property cases grant such relief. *See, e.g., Chanel, Inc. v. Zhixian*, Case No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010) (prohibiting Defendants from transferring ownership of domain names during pendency of until further Order of the Court"); *Gucci America, Inc. v. Does 1-10,* Case No. 10-cv-60328-JAL (S.D. Fla. March 22, 2010) (same); *Gaffigan v. Does 1-10*, Case No. 09-cv-61206-JAL (S.D. Fla. Sept. 11, 2009) (same); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969 (N.D. Cal. 2006) (prohibiting Defendants "from using, selling, licensing, or transferring the domain name"); *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463,

467-68 (E.D. Mich. 2001). Here, an interim order prohibiting Defendants from transferring the Subject Domain Name poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Venus full relief.

c.    Entry of an Order Redirecting and Disabling the Subject Domain Names is Appropriate.

In addition to the relief requested above, Venus respectfully requests this Court issue an order that the domain name registrar, namely GoDaddy.com, temporarily disable the vessos.com website used by the Defendants to display the infringing images. The use of the Infringing Photographs on the website is not only violating Venus's intellectual property rights, but diverting an unknown number of customers from Venus's website, causing actual confusion among Venus's customers, and deteriorating Venus's reputation and good will in the marketplace.

In other cases involving the violation of intellectual property rights, Courts have granted the relief requested.  *See e.g., Chanel, Inc. v. Zhixian*, Case No. 10-cv-60585-JIC (S.D. Fla. May 5, 2010) (ordering that the registrars set the domain names to redirect to plaintiff's publication website and thereafter placing domain names on lock status, preventing the modification or deletion of the domains by the registrars or the defendants); *Gucci America, Inc. v. Does 1-10*, Case No. 10-cv-60328-JAL (S.D. Fla. March 22, 2010) (granting temporary restraining order and disabling domain names at issue); *Gaffigan v. Does 1-10*, Case No. 09-cv-61206-JAL (S.D. Fla. Sept. 11, 2009) (granting temporary restraining order and disabling domain names at issue); *see also Bd. of Dirs. of Sapphire Bay Condos. W. v. Simpson*, 129 F. App'x 711, 77 U.S.P.Q.2d (BNA) 1629 (3d Cir. May 2, 2005) (affirming district court's grant of the preliminary injunction ordering defendant to "cancel his registration of the domain name and refrain from using the name, or any derivative thereof, for any Web site under his ownership or substantial control");

*Ford Motor Company v. Lapertosa*, 126 F. Supp. 2d at 468 (preliminary injunction issued

ordering the transfer of the domain name at issue to plaintiff pending resolution on the merits);

*Chanel, Inc. v Paley*, Case No. 09-cv-04979-MHP (N.D. Cal. Oct. 26, 2009) (granting temporary

restraining order and disabling domain names at issue).

Accordingly, Venus respectfully requests that the Court order the Defendants and their

registrar for the vessos.com domain name (GoDaddy.com) set the vessos.com website to

automatically redirect to a website created by Venus appearing at the Uniform Resource Locator

("URL") http://Venuscopyrightenforcement.com/Vessos/, whereon a copy of all subsequent

pleadings, documents, and orders issued in this action will be displayed by Plaintiff.

    d.    <u>Entry of an Order Preventing the Transfer of Defendants' Assets.</u>

In addition, Plaintiffs request an order restraining Defendants' assets, particularly

directed to Defendants' PayPal account, so that Plaintiff's right to an equitable accounting of

Defendants' profits from use of the copyrighted images is not impaired. Sections 504(c) and 505

of the Copyright Act provides for statutory damages between $750 and $150,000 for each and

every act of willful infringement and an award of attorneys' fees and costs. 17 U.S.C. §§ 504(c)

and 505. If the Defendants are allowed to move or hide assets it will frustrate Venus's ability to

fully enforce its intellectual property rights, particularly given the fact that the Defendants are

outside of the country and difficult to locate.

Restraint can be granted pursuant to Federal Rules of Civil Procedure 64 and 65 and

under the Court's inherent equitable power to issue provisional remedies ancillary to its authority

to provide equitable relief. *Levi Strauss & Co., 51* F.3d at 986-87; *Reebok Int'l v. Marnatech

Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd sub nom. Reebok Int'l v. Marnatech Enters.*,

970 F.2d 552 (9th Cir. 1992). In *Reebok*, the district court granted the plaintiff a limited restraint

of the defendants' assets for the purpose of preserving them, thus ensuring the availability of a meaningful accounting after trial.

In the years since *Marnatech*, several federal courts have granted temporary restraint of assets in intellectual property disputes, including recently in actions against operators of websites selling counterfeit products to ensure the availability of equitable accounting. *See, e.g., The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, No. 10-Civ-1630 (AKH)(S.D.N.Y. December 2, 2010); *National Football League v. Chen Cheng, et al.*, No. 11-Civ-00344 (S.D.N.Y. February 1, 2011); *Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*, No. 10-Civ-9336 (S.D. N.Y. January 4, 2011); *American Bridal and Prom Industry Assoc., Inc. et al. v. The Partnerships and Unincorporated Associations Identified in Schedule "A" and John Does 1-100, et al.,* No. 1:16-cv-00023 (N.D. Ill. January 13, 2016). Such relief is appropriate here, as well.

Accordingly, Venus respectfully request the Court order the Defendants and the operators of Defendants' accounts, specifically Defendants' PayPal accounts, prevent the transfer of Defendants' assets and freeze Defendants accounts until further order of this Court.

8.    <u>Only A Minimal Bond Is Required To Secure The Injunction.</u>

Rule 65(c) provides "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Although the language of Rule 65(c) appears to be mandatory, over the past twenty years, federal courts have come to recognize that the district court possesses discretion over whether to require the posting of security." *Popular Bank v. Banco Popular*, 180 F.R.D. 461, 463 (S.D. Fla. 1998).

"Whether or not to require a bond in any particular case -- and the amount of any such bond demanded -- is within the discretion of the trial judge." *University Books & Videos, Inc. v. Metropolitan Dade County*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999) (*citing USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir. 1982) and *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978). The requirement that the moving party post a security bond may be waived by the Court. *People ex rel. Van de Kamp v. Tahoe Reg. Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985); *BMW of North America, Inc. v. Au-Tomotive Gold, Inc.*, 1996 U.S. Dist. LEXIS 22828 (M.D. Fla. 1996); *Baldree v. Cargill, Inc.*, 758 F. Supp. 704 (M.D. Fla. 1990), aff'd, 925 F.2d 1474 (11th Cir. 1991).

Because of the strong and indisputable evidence of willful copyright infringement, Venus requests this Court require it to post a bond of no more than ten thousand dollars, subject to increase at the Court's discretion should the restrained funds exceed $10,000. In the event Defendants do offer evidence on this issue, Venus respectfully request an opportunity to respond.

## III.   <u>CONCLUSION</u>

Plaintiff respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order and schedule a hearing on Plaintiff's Motion for Preliminary Injunction before the expiration of the Temporary Restraining Order.

Dated: July 22, 2016

By: /s/Peter A. Chiabotti
Allan Gabriel
*Pro Hac Vice Pending*
Dykema Gossett PLLC
333 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
Telephone: 213-457-1800
Facsimile: 213-457-1850
agabriel@dykema.com

Aaron D. Charfoos

*Pro Hac Vice Pending*
Dykema Gossett PLLC
10 S. Wacker Drive
Suite 2300
Chicago, IL 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155
acharfoos@dykema.com

David Otero
Akerman LLP
Florida Bar No. 651370
david.otero@akerman.com
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

Peter A. Chiabotti
Akerman LLP
Florida Bar No. 0602671
peter.chiabotti@akerman.com
220 Lakeview Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 653-5000
Facsimile: (561) 659-6313
*Attorneys for Plaintiff Venus Fashion, Inc.*